# WHEELING.

## SMITH v. BOND et als.

Submitted June 27, 1884.—Decided December 13, 1884.

1. Where in a chancery suit to require money to be paid on a contract it appears, that one of the parties, who signed the contract, had no

interest in the subject but was acting as agent merely, and the other contracting party knew that he was acting as agent for others, no personal decree can be had against such person for the repayment of moneys paid on such contract.  (p. 392;)

2. Where such other parties, for whom such agent was thus contracting, were the owners of the land, in reference to which the contract was made, and the contract provided, that any repayment of money so paid should be paid out of the proceeds of the sale of the land, a court of equity alone has jurisdiction to compel such repayment.  (p. 392.)

Statement by Johnson, President :

In November 1874, Jonas Smith instituted his suit in Putnam county to enforce the following contract :

" I hereby give to C. B. Dungan, of Philadelphia, the refusal to purchase a tract of about 100,000 acres lying in Putnam county, West Virginia, known as the Jabel tract, on the following conditions : A loan of $60,000.00 to be paid or become a part of the purchase-money as hereinafter provided.................................................... $ 60,000.00.

On the 10th of June next with interest from May 1, 1865..   40,000.00.

On the 1st day of July next with interest from the 1st of May, 1865   ...................................................   100,000.00.

And take said estate subject to a mortgage with interest at 7 *per cent.* from April 1, 1865   ............................   100,000.00.

Making the whole amount of said purchase   .   .........$ 300,000.00.

" With the express condition that if said $40,000.00 is not paid on the 10th day of June next, this refusal absolutely ceases and determines, with the option to said Dungan to elect on that day and not thereafter, and make known to me personally his said election, or by written notice left at my office, 132 Broadway, either to recover said sum of $60,000.00 from and out of the proceeds of sale of said estate with interest at seven *per cent.* from date hereof, or instead thereof to become a joint owner in one equal undivided fifth part of said estate unencumbered.   In case said election is not made by said Dungan on the 10th day of June as aforesaid, then I reserve to myself the option either to repay said $60,000.00 as aforesaid, or to admit said Dungan as such owner of one-fifth part of said estate as aforesaid unencumbered.   The title papers by which said estate is to be passed are : first, quit-claim deed executed by Edward G. Tyler and wife, dated April 12, 1865 to D. V. McLean, and second—an assignment

with certain covenants therein contained, dated April 17, 1865, executed by Henry J. Whitehouse, Caroline E. Tyler sole administrator, &c., and others to said D. V. McLean, and which said Dungan is to arrange with said McLean in such manner as he may choose, and hereby assents to whatever may be the mode of passing the title of said estate by me, and hereby directs me to make in case of his taking the same under this refusal.

"NEW YORK, *May* 10th, 1865.        THOMAS BOND,
                              "*Treasurer of Trustees.*

"I hereby accept of the refusal of said estate upon the terms set forth, and consent and direct the title to be passed as therein specified.

"NEW YORK, *May* 10th, 1865."        C. B. DUNGAN."

The bill alleges, that the other payments provided for were never made, and that by the terms of the agreement on the 10th day of June, 1865, the refusal ceased and determined; that said Dungan did not elect at that time either to recover back the money or to become part owner in the land; that said Bond has not elected, which he will do, pay the money with interest or admit said Dungan as a part owner in the land; that at the time of entering into said contract $30,-000.00 in cash was paid by Dungan, and acceptances given for the other $30,000.00, which were never paid because of the failure of the bank, on which they were drawn; that in making said contract Dungan was but the agent acting for and in behalf of the plaintiff, who furnished said Dungan the money paid and is entitled to the benefits of said contract; that plaintiff has frequently made application to said Bond to admit him as a onefifth owner in said lands, but that said Bond has invariably refused to do so; that on divers occasions he has demanded the repayment of said $30,000.00 and interest as provided for in said agreement, and with these demands said Bond has failed to comply; that since entering into said agreement, and within the last few years, said Bond has sold large portions of said lands and realized large amounts of money therefrom. By reason whereof he charges, that he is entitled to receive from and to have a decree against said Bond for $30,000.00 with seven *per cent.* interest thereon from the 10th day of May, 1865. The bill also alleged, that

Bond is the owner of other real estate in the county of Putnam, and the plaintiff has caused a *lis pendens* of this suit and attachment to be recorded in Putnam county. The prayer is for a personal decree against said Bond for said $30,000.00 and interest, and a sale of his real estate sufficient to pay the same. Bond and Dungan were made defendants to the bill. Smith made his affidavit for an attachment on the 28th day of October, 1874; and an order of attachment in the suit issued on the 2d day of November, 1874, and was levied on Bond's interest in said Jabel tract of land, and also on all his interest in a certain other tract of 2,500 acres of land.

In August, 1875, Bond appeared and demurred to the bill; and in October, 1875, he filed his answer to the bill, in which he says, that on the 10th day of May, 1865, he was the treasurer of the trustees of the Great Kanawha Land Association, which association was composed of Alvin Smith, E. D. Beach and E. W. Bond, composing the firm of Beach & Bond, E. G. Tyler, W. H. Tyler, Henry J. Whitehouse, Jacob B. Carpenter, George I. Bond and Peter Clark, and as such treasurer alone and on behalf of the Association, he being the only agent of the Association, made and entered into the contract exhibited in the bill; that at the time said Dungan knew he was acting as agent only, and also knew for whom he was acting, and if there is any liability on said contract to said Dungan, it is the liability of said Association and not of this respondent.

He admits that said Dungan paid $30,000.00 on the 10th day of May, 1865, on said contract and delivered to H. J. Whitehouse his own checks past dated for the other $30,000.00, which were never paid; he admits that the other payments were never made, and that Dungan did not make the election provided for by the contract, and insists, that he had no right to make it, because he did not make the loan of $60,000.00. He denies, that it was obligatory upon him to make the election provided for by the agreement, because Dungan's failure to comply with his agreement rendered the contract nugatory, and because in view of all the disastrous consequences resulting from such failure, there is no obligation on any one to pay said $30,000.00. He denies, that Dungan was acting for plaintiff, and avers that Dugan always

claimed until 1873 that he was acting on his own behalf. He admits, that a long time after the transaction he learned, that complainant loaned Dungan moneys, and that respondent feels himself about as much bound to pay him the money advanced to meet the checks, which is not pretended, as he is to pay him the $30,000.00. He denies, that the plaintiff has applied to him to be admitted as a part owner in the land, or that he has demanded the payment to him of the $30,000.00, &c. He admits that he has sold some of the land and received some money therefor, but not enough to pay taxes and expenses attending the management of the land. He pleads the statute of limitations to plaintiff's claim, and denies that he is the owner of any real estate in the said county of Putnam.

James Smith filed an amended bill in the cause making the members of the Great Kanawha Land Association and the personal representatives and wives of the deceased members parties to the suit; also making James L. McLean a party, and prays that they be required to answer the orignal and amended bill, " and that all proper decrees may be entered herein against them, which the complainant may show himself entitled to," &c. An order of publication was taken against all the parties named in the amended bill, except Thomas Bond and J. L. McLean.

Thomas Bond answers the amended bill; and in his answer he repeats, that he was merely acting as the agent of the parties named in the amended bill constituting the Great Kanawha Land Association, and that Dungan knew at the time the contract was made that he was so acting. He denies, that Dungan was acting as the agent for Smith, &c.

J. L. McLean answered, that he was the one third owner of said land, and claims, that it is not subject to any claim of the plaintiff.

On October 27, 1876, the court overruled the demurrer to the bill.

On April 30, 1877, the case was heard on the proceedings formerly had and papers filed and on the depositions and exhibits and on consideration thereof the court rendered a personaal decree against the defendant, Thomas Bond, for the sum of $55,131.00 with interest from April 28, 1877, and

the costs and dismissed the bill as to all the other defendants except J. L. McLean and E. W. Bond, and as to them no decree was then rendered.

From this decree Thomas Bond appealed.

*E. B. Knight* for appellant.

*W. H. Hogeman* for appellee.

JOHNSON, PRESIDENT:

It appears that Bond filed a petition and bond for the removal of the cause to the circuit court of the United States and that the State court refused to remove the same. But as that error, if it is error, is expressly waived here, it will not be considered. It is here insisted for appellant, that under the pleadings and proof in this case no personal decree could have been rendered against him. The evidence is clear, that Bond was not acting for himself at all, when he entered into the contract with Dungan, but was the agent of the Great Kanawha Land Association, and that Dungan knew the fact at the time, and that Dungan knew that the greater part of the $30,000.00 then paid in cash was paid by the said Bond as agent for Bishop Whitehouse on the $100,000.00 mortgage, which he held on the lands; and the evidence further shows, that Dungan gave the checks for the other $30,000.00 not to Bond but to Bishop Whitehouse. There is no evidence in the record, that at the time Thomas Bond had any interest whatever in the lands he was selling. The contract does not provide that in any event the money was to be paid personally by Bond, but in case of the election of either Bond or Dungan was to be paid "out of the proceeds of the sale of said estate." It seems that there never was any election by either.

The decree was erroneous in holding Bond personally liable for the repayment of the $30,000.00.

It is insisted, that there is no evidence, that Dungan was acting for Smith. It seems to me that the weight of the evidence shows, that he was so acting, and that he was making an investment of Smith's money for the benefit of Smith.

It is also claimed, that equity has no jurisdiction in this cause except under the statute permitting a foreign attach-

ment in equity, and as that statute is repealed, if the decree is reversed, the bill must be dismissed. There is nothing in this position; because, as the repayment of the money, if required, should be made out of the proceeds of the sale of the land, resort must be had to equity, and a court of law would not have jurisdiction.

But it is insisted, that a great portion of the land has already been sold, and the money ought to have been paid out of that. Bond in his answer says, that the proceeds of the sale of lands was not sufficient to pay the taxes and expenses, and the proof is not clear how this is. At the time the suit was brought it is not clearly shown how much land had been sold and to whom, nor whether the purchaser had any notice of the contract set up in the bill.

It is insisted for the defendants, that, as the $60,000.00 was not paid but only $30,000.00, the latter was forfeited, and there is no liability to pay it back. It is a fact undenied, that the $30,000.00 was paid, and the defendants got the benefit of it. The contract did not provide in any event for the forfeiture of the amount paid, and the payment of the whole $60,000.00 in cash was modified by taking the one half in cash and the other in checks.

Under the circumstances in this case it would be inequitable not to require the repayment out of the proceeds of the land of the $30.000.00 and its interest; and it should be decreed to be a charge on the unsold lands and on such as was purchased with notice of the contract. And if the lands have been all sold to innocent purchasers, then there should be a personal decree against those who were, when the contract was made, partners in the Great Kanawha Land Association.

But it is insisted that the claim is barred by the statute of limitations. The statute would not apply to an equitable demand of the character of the one shown in this cause; and under the circumstances the doctrine of laches could not apply.

The court clearly erred in dismissing the bill as to the members of the Land Association.

The whole frame of the bill proceeds against Thomas

Bond personally; and we have seen, that he is not personally liable on the contract. The plaintiff will be allowed to amend his bill and proceed according to the principles herein set forth.

The decree of the circuit court of Putnam county rendered on April 30, 1877, is reversed with costs to the appellant; and this cause is remanded with leave to the plaintiff to amend his bill as herein indicated, and for further proceedings to be had therein.

REVERSED.    REMANDED.